Good morning. Our first case this morning is case number 419-0334, Guns Save Lives, v. Hwame Raoul. And for the appellant, we have Mr. Patterson. And for the appellee, Ms. Hunger. You may proceed, counsel. Good morning, Your Honors. May it please the Court, adjust that a little bit, Pete Patterson for the plaintiff appellant, Guns Save Lives. We are here today asking the Court to reverse the trial court's refusal to enjoin Illinois's outlier law that requires law-abiding citizens to obtain a license to possess a firearm even within their own home. There are various reasons why this law is unconstitutional, as we've explained in our brief. But at the outset, I'd like to focus particularly on one. And that is that Illinois... Counsel, let me ask you this. Sure. Yeah. Ultimately, what are you asking this Court to do? We're asking you to order the district court to enter a preliminary injunction enjoining the state of Illinois from enforcing its requirement that citizens have a FOID card to possess a firearm in the home. We've asked for an injunction to enjoy the FOID Act generally, so to possess a firearm in the home, to possess it, to have one, to purchase a firearm, to go to a firing range. But we're not asking the Court to do anything to affect Illinois's laws on the concealed carry of firearms. So we're only talking about firearms within the home here, and obtaining a firearm within the home, which is obviously essential to exercising that right. Training with a firearm, as Ezell held. And so you're not asking us to declare the statute unconstitutional? Well, yes. We're asking you to declare the statute unconstitutional. That's the relief we're seeking in the law. Doesn't that take it too far? I mean, you're appealing the denial of a request for an injunction. Is it really our place to declare the statute unconstitutional? No, that's precisely right, Your Honor. We're asking you to rule that it's unconstitutional, or that we are likely to show that it's unconstitutional, and therefore enter an injunction in joining its enforcement during the pendency of this appeal. Well, in looking at whether or not the trial court should have granted the injunction, we obviously have to consider whether or not you're likely to proceed on the merits. Yes. That is different than necessarily ordering or finding that you win, that it is unconstitutional. Would you agree? Yes. So we're not asking you to find that we win. We're asking you to find that we're likely to win and that we satisfy the other preliminary injunction factors, and therefore that the trial court should have and now must enter a preliminary injunction. But if you win the injunctive relief that you requested, then haven't you essentially won the case on its merits? No, we haven't, because if we were ultimately to lose after a trial and the law was no longer enjoined, then our clients would, and all the members of Gun Saved Life, would need to have a FOID card to possess a firearm. So to be clear here, we have some illustrative members that we discuss in the complaint and that also attach affidavits to the PI motion, but we're not challenging any particular application of the FOID card requirement. We're challenging it on its face, that facially it's unconstitutional to require a person to possess a license to possess a firearm in the home. And as I was saying at the outset, I'd like to focus on one aspect of that. So you want us to find this unconstitutional temporarily? We want you to find that we are likely to succeed in showing that it's unconstitutional and therefore that an injunction should be entered. Just as in the Eazell case in the Seventh Circuit that's been cited in the briefing to this court, there's an Eazell 1 and an Eazell 2. Eazell 1 was on a PI motion, and the Seventh Circuit reversed the district court's refusal to preliminarily enjoin Chicago's requirement that people, that gun ranges could not locate in the city of Chicago. So it's a similar dynamic here where we're asking that you find that we're likely to succeed on the merits and therefore that to foreclose the irreparable harm that we're suffering from being subject to an unconstitutional requirement, that that law be enjoined during dependency of this lawsuit. Purpose of injunctive relief, though, also includes keeping things on a status quo, correct? Well, I think what a lot of the cases say – First of all, the answer to that question is either yes or no. Then we'll go on to the next one. Right. Well, that is one purpose of an injunctive relief. What do you see as the status quo? I see the status quo – a lot of cases discuss it as the last uncontested status. So the last uncontested status here would be that we're not required to possess a license to possess a firearm. But even – there's no rule against a preliminary injunction that does not enforce the status quo. The requirements are you show your likelihood to succeed on the merits. You have no relief at law. You're going to suffer irreparable harm if the law is not enjoined. The balance of hardships tips in your favor. So it's not a requirement that you maintain the status quo. And again, in the Eazell case in Chicago, there was a law on the books that said in you had to do some training, and then it said ranges couldn't be in the city. And that law was enjoined on appeal – on a preliminary injunction appeal. So to proceed – so we can discuss why we're likely to succeed on the merits if the court is open to that. We've got – the point I was trying to make was – Counsel, before you do that, I just – this is a teachable moment. You're at the law school, so I want to elaborate a little bit. You said that you're making a facial challenge to the statute. Yes, yes. And so basically you're saying there are no circumstances under which this statute is constitutional. It's not based on application in one individual situation, but you're saying under no circumstances. Yes, exactly right. And so the Illinois Supreme Court has discussed that distinction. For example, in the Burns case, which had to do with carrying a firearm in public, there was a felon that was convicted. And the state argued that, well, this is constitutional as applied to him because he's a felon. And the court said, no, that's not how it works. That's not an element of the law that doesn't say on its face that you have to be a felon. The law that said you can't carry firearms in public is facially unconstitutional. Therefore, you can't apply it to him or to anyone else. And that's the argument that we're making here. And a key reason why it's facially unconstitutional is the state cannot even satisfy intermediate scrutiny. That's the lowest level of scrutiny that potentially could apply, because under Heller the court said rational basis review is out. And the state can't satisfy intermediate scrutiny for two related reasons. First, they can't carry the burden to submit actual evidence that this law advances the public safety interests that they say it will advance. And second, they – and relatedly, under the Supreme Court's decision in McCullen, which made this very clear, under any intermediate scrutiny, you have to show not only that the law will advance some government interest, but also that it's narrowly tailored to that interest. And in the intermediate scrutiny context, that doesn't mean it's the least restrictive alternative, but it means that it's not substantially broader than it needs to be. And the state has to show that it actually tried other approaches that didn't work or give good reasons why those other approaches wouldn't work. What level of scrutiny do you say applies? Well, we have two – so we say first that Heller's analysis should apply, which is that you do a historical and traditional analysis, and you determine whether it's consonant with the history of the right to keep and bear arms. And if the answer is no, it's unconstitutional without any scrutiny analysis at all. That's what the Illinois Supreme Court did in Aguilar and Webb. It's what the Seventh Circuit did in the Moore v. Madigan case. So we submit that our first argument is that that's the analysis that should apply. And here there's no history at all of this type of requirement, that a person have a license to possess a firearm in the home. Even today there's only one other state in the nation that requires this. So there's absolutely no history to speak of of this sort. It's an extreme outlier type of law in the history of firearm regulation. And secondly, we argue if a level of scrutiny is going to apply, it's got to be the strictest level of scrutiny possible. Under the Shires case, I don't know if I'm pronouncing that right, but the Illinois Supreme Court said you look at the breadth of the law, the number of people that it covers, and then you look at the nature of the law, how close it gets to the core of the Second Amendment. And here we've got a law that applies to the entire population of the state of Illinois, and it reaches into the home where the Supreme Court said Second Amendment rights are the most acute, it's the core of the right. So the strictest possible scrutiny should apply. And the state hasn't even argued that the law satisfies that level of scrutiny. So we're certainly likely to prevail if that level applies. But even under intermediate scrutiny, under McClellan, as I said, the Supreme Court has said you can't just immediately go to some broad prophylactic regime. There it was a 35-foot buffer zone around the entrance to abortion clinics without trying other things first. And the court specifically said if you've got some sort of outlier law that is not a law that is typical that other states have, you face a headwind. That's kind of some evidence that you don't really need to do what you're trying to do. And here there are a multitude of other avenues that Illinois could pursue or that already are on the books that they can enforce. You mentioned that there are, I think in your brief you said, a variety of mechanisms to enforce such as. Okay, yes, I'll list at least four. So one, we've got at federal law currently in order to buy a firearm from a licensed gun dealer, you have to submit to a background check. And so that background check is going to flag if you're a felon, if you're mentally ill, the same sort of things that Illinois says it needs to monitor with its void card requirement. Now it responds that, you know, for instance, it may not cover all the transactions we want it to cover. Well, then the solution to that would be to have a state law that extends the background checks more broadly if that's what the state desires to do. Second. The implication of your brief was that there are mechanisms currently in place. Yes. And one of those mechanisms currently in place is that to buy a firearm from a licensed gun dealer, you have to submit to a background check. What's currently in place in terms of regulating the sale of ammunition? I don't believe there are regulations currently in place, at least not at the federal level. I'm not positive at the state level, but I believe it's the void requirement that is the regulation that's in place. But just to be clear, in the McClellan case, for example, it's not what regulations are in place. It's what regulations are there that are in place or could be put in place that are narrower, less burdensome than the alternative that the state has. You're just taking it at your word. Your brief says a variety of mechanisms to enforce the laws are in place. Yes. I don't want to know what the requirements are. Okay. So that's the one that's in place. The second one that's in place is that there are currently laws against felons and the mentally ill possessing firearms. Those laws can be enforced vigorously. Most of the disqualifying conditions involve some sort of contact with law enforcement or other public institutions. For example, if you're convicted of a felony, that's obviously going to involve contact with the law enforcement system. So when that conviction comes down, there can be processes in place to ensure that a person doesn't possess firearms. But are there currently processes in place? There are currently processes in place that require that notification be sent to the state that a person has suffered one of these conditions. So those are two things that are in place. They can enforce the existing laws against prohibited possessors. There's background checks. And then there's also, as I said at the outset, there are concealed carry laws in place. So this is only about firearms in the home. So even if we were to prevail, the minute someone takes the firearm outside the home, carries it in a public street or something of that nature, if they don't have a concealed carry law, they would be violating the law. Now I mentioned four, but I did not understand the restriction to things currently in place. So the fourth, just to mention something else the state could do, is they could enact a red flag sort of law where friends, neighbors, associates of people that own firearms could tell the authorities, hey, there's something happening with this person. I think it's a problem that he's got a firearm. I think it's going to be a danger. And then if after some sort of procedure goes in place where that could be tested, that person could be disarmed. And several states have tried those sorts of laws. There are orders of protection and stalking no contact orders. Yeah, something of that nature. But they're called firearm protective orders or something like that where if there's a finding that a person poses some threat to public safety, they can have their firearms taken away for a time. And just to be clear, as in McCullen it notes, we're not necessarily endorsing the constitutionality of all these options, but we're not challenging them here. And the case there said, well, even nonetheless, you still consider them as potential alternatives to the more broad law that is in place. Opposing counsel indicates that you have basically switched gears, that you allege one thing in your complaint, basically primarily the issue of the $10 renewal fee,  and you've been going after the constitutionality of the statute. Does your complaint raise the issues that you raised in your motion? Yes, it very clearly does, and that can be seen in a few places. First, in paragraph 23, the count of the complaint, the Second Amendment count, starts around paragraph 21 or so. In paragraph 23, we say that the FOID Act places an unconstitutional tax on the exercise of this right. And then in paragraph 24, we say the FOID Act is also unconstitutional on its face because it directly burdens the exercise of Second Amendment rights. So we're raising two alternative theories under our Second Amendment claim. And then that can be shown, moreover, as we go on in that count, we discussed some of the problems with this law. And one of them was a situation that the Brown Court, which was in a criminal case, held the FOID Act unconstitutional in the cases currently before the Illinois Supreme Court, said, well, the way constructive possession has been interpreted, it means that it's impossible, you know, for example, when you're taking a shower, if you do that and you have constructive possession of the firearm and you don't have your FOID card on you, you're in violation of the law. So we mentioned that in the count. That has nothing to do with the fees. Obviously, it's going to the possession requirement. Similarly, the one named member that we mentioned in the complaint, Mr. Meyer, the problems that he had had nothing to do with the fees. He was denied, revoked a FOID card because of a false conviction that had, you know, the uncontradicted evidence in the records that it never took place. He was forced to return his firearm. Again, that has nothing to do with the fees. It wouldn't make sense that we would put those sort of allegations in the complaint if all we were doing was challenging the fees. In the trial court, when you were arguing the preliminary injunction, did you squarely address the constitutionality of the statute? Yes. In fact, that was our primary argument. And then we said in the alternative, I think they say in their brief, well, it's not until page 9 and page 16 that they get to the fees issue, but instead they switch. So that's another indication that we filed the PI motion very shortly after we filed the complaint, leading with the argument that it's facially unconstitutional. So, you know, clearly we had intended and understood the complaint to encompass both of those things, which is shown by our prayer for relief, which asks for the FOID Act to be struck down categorically, not just for an injunction against the imposition of the fees. So for all those reasons, we think it's pretty clear that we challenge more broadly in the complaint. And what is more, you know, Illinois is a fact pleading jurisdiction, not a law pleading jurisdiction. So even if we had mentioned the wrong legal theory or not included a certain legal theory, we have a Second Amendment claim in there. We have the predicate facts in there. Under Illinois law, that's all that is required to bring that issue to this court's attention. And in terms of, again, under inimmediate scrutiny, EZEL is very clear. EZEL 2 says that lawyer's talk is not sufficient. You need some sort of actual and reliable evidence. Here we don't have citation to a single study. We don't have a single affidavit. We don't have any explanation for why both the existing laws and the laws that Illinois could enact would not advance these interests to the same or substantially the same extent as putting this broad prophylactic sort of law on top of it, requiring law-abiding citizens. It's not only that they have to obtain the FOID card before they can assess a firearm. They have to maintain it. Every time you have your firearm in your possession, you have to have your FOID card in your possession. If you move, you have to update your address. If it gets lost, you have to get a new one. If it wears out, you have to get a new one. So it's constantly regulating your possession of the firearm every time that you have a firearm. And Illinois has absolutely no evidence that this advances public safety to any marginal degree. So for that reason, we submit we're likely to succeed on the unconstitutionality of that requirement. And switching briefly to the fees, I'll just focus on one point there, and that is that the other side relies on the Cox case from the United States Supreme Court. And that case held that a state could have a licensing regime with associated fees for public parades. But the court was very clear in that case that the reason it could do that is because this is a time, place, and manner restriction that's addressing an issue unique to parades on a public street, namely that you can't have two parades going on at the same time. So this actually is promoting speech by facilitating the ability of people to have parades. And the Supreme Court has been very clear in subsequent cases that that's what the Cox rationale is limited to, is where you have some sort of this rivalrous exercise of a constitutional right, and you need some sort of regulation in place to regulate that. So in the Murdoch case and the Follett cases, which came after Cox, they struck down laws that didn't fit within that regime. And then in the Forsyth case, the Supreme Court said very clearly, government, in order to regulate competing uses of public forums, may impose a permit requirement on those wishing to hold a march, parade, or rally. That rationale does not cover the possession of a firearm in the home. That's not a time, place, and manner restriction. You can't possess a firearm at any time, at any place, in any manner without a FOID card. The Supreme Court has struck down requirements of that nature rather than following the Cox line of cases. And then briefly, moving on to equal protection, we rely on the Harper case, as your honors know, which struck down a $1.50 poll tax saying that the payment or nonpayment of this poll tax has no reasonable relationship to whether you should be able to vote or not. Submit the same reasoning applies in this context. Whether you pay the FOID fees or not should have no bearing on whether you're able to possess a firearm. And just finally, because – Counsel, I'm sorry, you're out of time. You will have additional time on rebuttal, though, if you desire. Thank you.  Good morning, and may it please the Court. Deputy Solicitor General Sarah Hunger on behalf of the state defendants. The plaintiff is here today, as has already been noted, asking this Court to grant it extraordinary and unprecedented relief. It is asking this Court, on a preliminary injunction record and under the theory of associational standing, to enjoin the entirety of the state's firearm licensing scheme. Now, putting all of those threshold questions to one side, it's important to note that the FOID Act is constitutional. It is a longstanding regulation ensuring that dangerous persons, such as felons and the mentally ill, do not acquire firearms. And to put their request in context, the FOID Act itself has been in effect for more than 50 years. It actually predates the right to bear arms in the Illinois Constitution. But if we're doing the historical – I'm sorry. No, you go ahead. If we're doing the historical analysis, are we supposed to go back to the time that the Second Amendment was first in place? Well, a couple of points. They have two different theories here. They're relying both on the Second Amendment and the Illinois Constitution. So I would submit for all of the claims related to the Illinois Constitution an act that predates that Constitution must be deemed longstanding. Okay, you never made that distinction in your brief. Well, we discussed both in the brief, and I apologize for any confusion on that front. But, you know, they are raising both of those. But you mentioned confusion. Let me ask a question. Yes. Page 17 of your brief, you said, quote, All of the causes of action also focused on the challenged fee. There were no causes of action alleging that the Foyd Act itself was unconstitutional. Correct. All right. Page 5 of the complaint, after they outline not only the fee but all of the aspects of the Foyd Act requirements, they then put in bold type, The Foyd Act infringes on the rights of gun safe life members. They then talk about being subject to the Foyd Act restrictions affecting their right to possess firearms. Neither member that they identified lost their Foyd card as a result of the fee. Count 1, paragraph 24. Count 2, paragraph 29. Count 3, paragraph 31. Count 4, paragraph 37. All allege the same thing. The Foyd Act is also unconstitutional on its face because it directly burdens the exercise of Second Amendment rights. Count 1, paragraph 25. Count 2, paragraph 30. Count 3, paragraph 36. Count 4, paragraph 42. For these reasons, the Foyd Act is invalid and cannot constitutionally be applied to members of GSL or anyone else in the state. In their prayer for relief, they ask for a declaratory judgment that the Act, not the fee, violates the Second and Fourteenth Amendments and that you be enjoined from enforcing the Act. Nowhere in the complaint do they seek relief only from the tax. I'm trying to figure out where in the world you got the idea they weren't talking about the Foyd Act being unconstitutional on its face. Well, I would point you to the next sentence in paragraph 24. They say the Foyd Act is also unconstitutional, as you read, and then the very next sentence says, Ownership licenses with attendant fees have no basis in the history and tradition of firearm regulation in the nation. Every time they define the license, they define it with the attendant fee. But in any event, I'm here today able and willing to speak to the constitutionality of the Foyd Act. When you take everything together, our point was it's a preliminary injunction motion, actually a TRO motion that they brought moving very quickly through the circuit court. You have a complaint that is ambiguous about what exactly they are seeking, and you have two members that don't completely line up with either theory in terms of standing. When you look at that all together, this is not the case to strike down or enjoin the entirety of the state's firearm licensing scheme. But on the merits, going back to the question of whether this is longstanding, if you look at the time, as Heller said, 1791, if that's the time period that we're looking at, Heller itself said it's a longstanding regulation to be able to ban felons and the mentally ill and other dangerous persons from possessing or acquiring firearms. Now, we also know— Because it had a basis that preexisted the Second Amendment. Right, but what we also know, that if a state can set those substantive requirements, a state can also have a system to enforce those requirements. The Seventh Circuit has said that time and again, in Barron, for example, and Culp II, and this court does follow, as the Illinois Supreme Court has indicated, this court does follow decisions of the Seventh Circuit. So you're not necessarily looking at, well, was this specific licensing scheme in effect in 1791? You're looking at were the underlying substantive requirements, which counsel today has said they are not challenging. There are no challenges to those substantive requirements. And if a state is able to have those substantive requirements, it has to have a way to monitor those individuals and to have a scheme to make sure that it's being followed. How did the other 48 states manage to do it without it? Well, so that is another point that I would like to bring up. There are actually about 15 states that have similar requirements to Illinois. Now, they're not exactly the same. Wait a minute. Blanket restrictions on the possession or ownership of firearms, as opposed to restricting your right to carry in a certain way, restricting certain types of firearms, restricting handguns, concealed firearms. You're saying that there are 15 other states that have blanket restrictions on the ownership, possession, purchase, or sale of firearms. Yes, and I'm happy to go through them. So if you start with the three states that have license to possess a firearm, that's Illinois, Massachusetts, and New York. There are 10 states for a permit to purchase, as you said, Your Honor, as I said, is included in the description. Point of sale. Point of sale, and obviously one needs to purchase the firearm in order to possess it. Those are Connecticut, Hawaii, Iowa, Maryland, Michigan, Nebraska, New Jersey, North Carolina, Rhode Island, Massachusetts. Do any of those restrict the ownership of firearms? Massachusetts does both. We know Massachusetts and Illinois are the two states that have a Ford-type card. Exactly, right. And so the others are the permit to purchase, but not the permit to own. But as we know, you have to acquire the firearm in some manner. You didn't have to buy it there. That's true. If you are buying in that state, though, then yes, it would be subject to those laws. Then no, you would be able to possess it in that state. Subject to the state's other laws. And you don't have to reapply. You would have to, no, you do not have to reapply, but if you go to purchase a new firearm. Yes, it's one time. D.C. has a firearm registration law, so if you did move to D.C. with your firearm, you would have to register it. And there are two states, California and Washington, that require firearm safety certificates before you can purchase a firearm. So that's similar, I suppose, to the ten that I enumerated before. Again, that's the point of sale. The point of sale. But the entirety of this analysis is not looking at, either when you're looking historically or currently, whether or not there is an exact analog. Illinois is not an outlier. There are many different policy choices that are constitutional and that are reasonable. As shown by what I just identified here. And Illinois has selected one that other states have selected that has been in place since 1967. And there are analogs. What other states require a FOID card like Illinois? That would be Massachusetts and New York would be the two. New York only relates to handguns, I will note. Right. So that is a distinction. So really we're down to Massachusetts. Massachusetts is the only one that has an exact analog, but that is not required in order to find something constitutional. As numerous courts, including the Seventh Circuit, have held, the legislature is allowed to choose among different reasonable policy alternatives. It does not have to do exactly what every other state is asking it to do. Well, no, but if this is such a terrible problem, I'm trying to figure out why is it that only two states see the need to have this blanket restriction? I suppose other states have found that for their particular problems, the permit to purchase does satisfy that. They may also have other regulations that Illinois does not have. For example, other states have bans on large capacity magazines. They have bans on assault rifles. They have all sorts of other regulations that Illinois does not have. That is part of federalism. The question here is whether the General Assembly has made a decision that is constitutional and whether it is reasonable when looking at all other alternatives. Counsel, is there any obligation on the part of the state  and basically the reasons why you're asserting that this statute is constitutional and necessary? No, that is not required. As I have been stating, under intermediate scrutiny, the question is whether or not it is a substantial relationship between the public policy goal and the regulation at issue. And I would note, too, there is plenty of evidence that we would put forward in a full hearing and not on a TRO that shows that licensure systems actually do have incremental benefits that these permit-to-purchase statutes do not have. Ms. Hunger, I want to ask a question in that regard. Mr. Patterson indicated in his argument that there is no evidence in the record regarding the efficacy of the FOID law. A, do you agree with that? And B, what relevance is that at the TRO stage? So there is evidence in the record showing that the General Assembly has made a reasoned judgment. If you look at the logic and the common sense that we have pointed to and the different cases, there is no documentary evidence in the record, for example, expert witnesses or something that you would see at a later stage. I would say this just underscores the extraordinary nature of the relief that they're asking. I mean, this statute has been in effect for over 50 years, and without any type of evidentiary record on a TRO, they are asking this court to enjoin it. I can point to several studies right now that we would submit as this case goes back and a full hearing is held on these matters. For example— Well, counsel, this would be outside the record? They are empirical studies. Were they admitted at the trial court level on this issue? They were not. I'm happy to go through them, or I can also move on, whichever the court prefers. But there is substantial empirical evidence on our side, which also explains why all of these other states are requiring licenses to possess or to purchase. I would note that as this court has held the Illinois Supreme Court, federal courts, though, you need to just show that the General Assembly is picking among reasonable policy alternatives. And they have done that here. It makes sense that if you have a system where someone has to show that they are eligible to— they have to have a point of contact with law enforcement, they have to have a point of contact often with judges, to come forward and show that they satisfy the requirements. That is going to deter some criminals and some mentally unfit individuals from not possessing firearms. And that is all that is needed to show. In our brief, we cite examples of cases where individuals thought that they could get a FOID card or they could get a CCL card. You take a look at their background, and they absolutely should not have one. One individual threatened to put his neighbor in a wood chipper and six feet underground. That came out in the course of ISP going through and checking to see whether this person was dangerous. That person obviously thought they were not dangerous. And without a system like this, that person would possess a firearm. Because they thought—they looked at their situation and thought, I can possess a firearm. This is why we have these enforcement systems. It's so that the state police can check and make sure that the public is safe. The plaintiff is not challenging any of the underlying substantive requirements. They simply do not want to fill out the application. And I would note, they're here under associational standing doctrine. They have not pointed to any members showing that they cannot afford the $10 fee, that they cannot— Standing is an affirmative defense in Illinois, and we have raised it. Yes, and we have raised it, saying that the two members, that they have come forward, only one on appeal, Mr. Meyer was the only one that they mentioned on appeal. No one has come forward to say, this is too burdensome for me to apply for this. Wait a minute, it's your burden. I keep going back to that, because you keep throwing it back on the plaintiffs. You did that in your brief, too. I'm trying to figure out how you do that, because it's your burden to establish they don't have standing. It's not enough to say, unjudged, they don't have standing. Well, that's within their personal knowledge, whether they feel burdened. We have said, as an affirmative defense, that they have not explained how they feel burdened. It would be very easy for them to stand up and say, for example, I can't afford the $10 fee, or the application process is really hard for me for these reasons. We have no idea why they are here challenging— Those aren't the elements. That's not part of the elements of associational standing. Well, associational standing, you have to have a member that has suffered an injury in fact. And so we need to know what that injury in fact is. And it's not evident from anything. They say there's a privileged right to possess a firearm without having to get the state's permission first and pay a fee for it. They say that, but, for example, Mr. Meyer is not— Is there anything not true about that? That is what they are saying, but— Well, wait a minute. No, no. You're saying that's what they're saying. Is there anything not true about the fact that you have to get the state's permission and you have to pay a fee before you can possess a firearm in Illinois? There's something untrue with respect to Mr. Meyer, and that is he has a misdemeanor crime for domestic violence. That is a federal prohibitor. There's no evidence of that. That has nothing to do— Do you agree there's no evidence of that? I do not agree with that. So you came up with something. The Illinois State Police have said, as Council has admitted in their brief, the Illinois State Police has said he has a misdemeanor crime of domestic violence. I understand Mr. Meyer disagrees with that. Well, the record in Chicago disagrees with it too, right? That's one piece of evidence. The Illinois State Police have come forward with another piece of evidence. Was that submitted at the trial court level? Well, the piece of evidence is that the Illinois State Police said he didn't have a misdemeanor crime of domestic violence based on their review of his file. And that, as I understand, is uncontested in the record. That's part of their complaint and in their motion, that the Illinois State Police believes that he has a misdemeanor crime of domestic violence. I don't believe that's a contested fact. And you've got some document that's going to prove that. I don't—that is not in the record. But it's uncontested that that was the finding by the Illinois State Police. Yeah, their position is they were wrong. Right. Because once they had checked for the records in Chicago, there are none. So their position, there are actually another adequate remedy at law for Mr. Meyer, and that is to file a Section 10 petition and challenge that, which I understand that he has done. But that's the remedy for that. And he is in the process of that, as I understand it currently. So the remedy for a claim that an act is unconstitutional is to utilize the provisions of the unconstitutional act in order to gain the relief they seek. How do they do that? If, as they claim, the act is unconstitutional, you're saying the way that they can get relief is to utilize the conditions of the unconstitutional act in order to get the relief they're seeking. And they're saying, no, wait a minute. We don't want the protections of the FOID Act. We want the FOID Act gone. Well, those are two separate claims. My point is simply to challenge whether or not he has a misdemeanor crime of domestic violence and is therefore federally prohibited from possessing a firearm. Absolutely nothing to do with the FOID Act. If he lived in another state and he has this federal bar, he cannot possess a firearm. It has nothing to do with Illinois' requirements. There is a remedy for that within the FOID Act. And as I understand it, he is currently going through those channels. And so we will know at some point who was right on that. This is a different type of claim. We still haven't gone back to the elements of associational standing. Right. So the elements of associational standing are that the association has to specifically identify a member. They don't have to name the member. They have to identify a member who has been harmed who would satisfy standing on their own behalf. And what I am saying is that there is no member who has come forward with that type of evidence after we raised the affirmative defense. I mean, we raised it right away in the circuit court. That argument seems circular, though. I mean, their whole premise is that it's unconstitutional to have to pay for the right to possess a weapon in your home. That's the harm, as I understand it. So I don't understand what additional showing you believe they need to make. Well, Mr. Meyer, for example, it's not the FOID Act that's injuring him. It's his federal prohibitor that's injuring him. So, for example, pointing to a member who has shown that they are being harmed in some way, other than just that they don't like the statute, if there is an actual injuring fact to that member. But regardless of standing and all these other threshold questions, what remains is that the plaintiff is here seeking absolutely extraordinary relief. The FOID Act is constitutional, as many state courts have held. In the first district, for example, in the Taylor case, the first district upheld the FOID requirement under strict scrutiny. You also have Mosley and Henderson. In the federal context, you have Horsley and Barron and Culp too. I mean, the FOID Act has been upheld as constitutional because it is. It's not an outlier law. Ms. Unger, I want you to, if you would, address one issue that was asked of Mr. Patterson before you run out of time here. I'd like for you to have an opportunity to address this. Mr. Patterson was asked in regards to the status quo. And is the status quo, the maintenance of the status quo, a factor that the trial court is to evaluate, and thus for us to evaluate here? And where do the equities lie there in this case? Yes, that is a factor, and the equities would lie with the state. As I've said, this law has been on the books for 50 years. It's also tightly wound up with many other laws, like the Concealed Carry Act relies heavily on the FOID Act. We actually do have a red flag law in Illinois here. That depends upon provisions of the FOID Act. If you undo the FOID Act, it's going to create a ripple effect that will affect the entirety of the firearm licensing scheme in Illinois, which is something that the plaintiff does not grapple with. We know that there will be more homicides, more suicides, more guns in the hands of criminals if these licensing regimes are lifted. And we simply are asking here today that this court not do that on a preliminary injunction record. This should be fully fleshed out with a hearing and with evidence on both sides. Thank you, counsel. Any rebuttal, Mr. Patterson? Yes, just briefly, and I'll start with that last point. We do not know that there will be more violence in Illinois if this preliminary injunction is entered. They have submitted no evidence at all showing that. Counsel says there were studies. They could have cited those studies in the trial court. They didn't. It doesn't matter that this is a PI posture. They still have a burden. In Eazell, the first Eazell, it was a PI posture. The court similarly said that you have to have adequate, actual, reliable evidence. They don't have that here. That demonstrates that an injunction should issue. Another thing counsel said was that, well, if felons and the mentally ill can be prohibited from possessing firearms, that means that the state needs to be able to track everyone to determine that they're not felons or mentally ill, but that simply one does not follow from the other. That would be saying, like in the First Amendment context, because we can ban libel and slander, we have to have everyone get a license before they can post anything to Twitter to ensure that what they're saying isn't libelous or slanderous. Maybe we think that would be a good idea, but it surely would be unconstitutional. That's just not the way that we regulate constitutional rights in this country, and that's why there's a dearth of historical or even contemporary support for this type of law, as counsel confirmed. It's only Illinois and Massachusetts. And finally, on associational standing, the state fails, I think, to grapple with what we're complaining about here. We're not complaining about the fact that Mr. Meyer was disarmed and now he has to go through some sort of process. We're complaining about the fact that Mr. Meyer and every other member of Gun Save Life has to get a license to possess a firearm. The answer to say, well, you can cure your harm by getting the license just makes no sense at all. That's the harm that we're complaining about. We don't want to have to get the license, and it's not just Mr. Meyer. There's another member that we specifically identified in the complaint. In paragraphs 4 and 18 of the complaint, we said this applies generally to Gun Save Life members who, like everyone else in Illinois, have to get these licenses, and then we submitted an affidavit from Gun Save Life's executive director stating that me, personally, if I didn't have to do this, I wouldn't maintain this license to possess a firearm in the home. So there's more than enough to support standing. And for those reasons, Your Honor, we ask that you reverse and order the district court to preliminarily enjoin the fourth paragraph. All right, thank you. We'll take this matter under advisement and be in recess at this time. Thank you.